UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMERO T. MOSES #231885,

        Plaintiff,                Case No. 2:09-cv-236

v.                                        Honorable R. Allan Edgar

PRISON HEALTH SERVICES, INC., et al.,

        Defendants.
_____/

## OPINION

Plaintiff Jamero T. Moses #231885, an inmate currently confined at the Chippewa Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants John or Jane Doe as Broker for Prison Health Services, Inc. (PHS), John or Jane Doe as Broker for American International Group, Inc. (AIG), and John or Jane Doe as Broker for Aetna Insurance Company (Aetna).

In Plaintiff's original and amended complaint, he asserted that he had surgery on May 28, 2009, for a fracture of his right leg. On July 29, 2009, Plaintiff was sent to Orthopedic Surgery Associates, where Plaintiff received x-rays and a physical examination. Dr. H. Blotter determined that Plaintiff required physical therapy for his leg and muscle strengthening and sent the order to the attending physician at the Newberry Correctional Facility (NCF). The doctor at NCF sent a request for authorization for physical therapy. On August 11, 2009, Plaintiff was transferred to the Kinross Correctional Facility (KCF), where he was informed that Prison Health Services (PHS) had denied the request for physical therapy. On September 7, 2009, Plaintiff was given x-rays, which showed

that the fracture was not healing. On September 15, 2009, the doctor at KCF ordered a second set of x-rays, which were taken at War Memorial Hospital. Plaintiff claims that the lack of physical therapy caused a delay in healing, problems to Plaintiff's knee and ankle, and pain. Plaintiff claims that Defendant PHS acted with deliberate indifference by denying the request for physical therapy, that Defendants Aetna is the liability insurer for PHS, and that Defendant AIG is the insurer for Aetna. Plaintiff asserts that all three Defendants violated his Eighth Amendment rights by virtue of their respective "policies and customs." Plaintiff seeks to be provided with physical therapy.

Presently before the Court are Motions to Dismiss filed by Defendants pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has filed responses and the matter is ready for decision. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.

2

*Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

In support of their motions to dismiss, Defendants assert that they are entitled to dismissal because they were not "acting under color of state law" as required to state a claim pursuant to § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).

The court notes that the United States Supreme Court has set forth three tests for determining whether a private actor may be held liable for its conduct under § 1983.

> These tests are: (1) the public function test, *West v. Atkins,* 487 U.S. 42, 49-50, 108 S. Ct. 2250, 2255-2256, 101 L. Ed.2d 40 (1988); *Flagg Bros. v. Brooks,* 436 U.S. 149, 157, 98 S. Ct. 1729, 1734, 56 L.Ed.2d 185 (1978); (2) the state compulsion test, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170, 90 S. Ct. 1598, 1615, 26 L. Ed.2d 142 (1970); and (3) the symbiotic relationship or nexus test, *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 721-26, 81 S. Ct. 856, 859-62, 6 L.Ed.2d 45 (1961).

*Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

Defendants AIG and Aetna assert that Plaintiff merely alleges that they were contracted to cover claims and that, pursuant to the "public function test," they cannot be considered state actors. The court agrees. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections. *Id.* Plaintiff fails to allege any facts showing that Defendants AIG and Aetna were involved in any decision denying treatment, or that they otherwise exercised powers which are traditionally reserved to the state.

With regard to the "state compulsion test," the court notes that such a test:

> requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. *See Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S. Ct. 2777, 2785, 73 L. Ed.2d 534 (1982); *Bier v. Fleming,* 717 F.2d 308, 311 (6th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S. Ct. 1283, 79 L. Ed.2d 686 (1984). More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives. *Blum,* 457 U.S. at 1004, 102 S. Ct. at 2785.

*Wolotsky*, 960 F.2d at 1335. As noted by Defendants AIG and Aetna, Plaintiff has failed to allege any facts which would support a finding that these Defendants could be considered state actors pursuant to the "state compulsion test."

Finally, Defendants AIG and Aetna assert that they cannot be considered state actors pursuant to the "symbiotic relationship test:"

> Under the symbiotic relationship test, the action of a private party constitutes state action where "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky,* 960 F.2d at 1335. The Supreme Court has cautioned that there is no "readily applicable formula" for finding such a close nexus; divining such a close relationship can only be accomplished "in the framework of the peculiar facts or circumstances present." *Burton*

4

>       *v. WilmingtonParking Auth.,* 365 U.S. 715, 726, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

*Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007). In this case, Plaintiff fails to allege any facts indicating that there is a sufficiently close nexus between the State of Michigan and Defendants AIG and Aetna. Therefore, because Defendants AIG and Aetna cannot be considered state actors, they cannot be sued by Plaintiff under § 1983.

In its motion, Defendant PHS contends that Plaintiff's claims should be dismissed because a corporation cannot be liable for the individual defendant's actions based upon a theory of respondeat superior or vicarious liability. It is well established that a plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Department of Social Services*, 436 U.S. 658 (1978)). A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. Like a municipal corporation, Defendant PHS' "liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

Defendant PHS asserts that the instant case is nearly identical to *Vickery v. Caruso,* 2008 WL 4058721 (E.D. Mich., Apr. 25, 2008). In *Vickery*, the plaintiff sued Correctional Medical Services because the director had denied a request for the plaintiff to receive an MRI. *Id.* at *6. The court in *Vickery* held:

> Even construing plaintiff's complaint indulgently, he has failed to sufficiently allege a pattern of refusal to conduct medically recommended testing and appropriate treatment. Plaintiff has alleged, at most, that CMS has a policy of requiring director approval for the

> particular testing recommended and that the testing in his case was not approved. Plaintiff does not, however, allege that CMS had a policy or practice of routinely denying physician requests for MRIs or other more expensive testing. Unlike *Raub* and *Simmons,* plaintiff fails to allege that there was a pattern or practice of improper denials of physician recommendations. As such, plaintiff's allegations against CMS merely "create speculation" or a "suspicion" of a legally cognizable claim.

*Id.* at *6.

Defendant PHS contends that this contrasts with the holding in *Davis v. Caruso*, 2009 WL 877964, slip op. at *14-15 (E.D. Mich. Mar. 30, 2009), which found that Plaintiff had pleaded the existence of a custom or policy. The court noted:

> First, Plaintiff's claim against Defendant CMS appears to be based upon a policy or practice of choosing cost savings over care. To begin, Plaintiff claims the CMS Defendants missed his allegations about CMS. Plaintiff claims that Westover "made a decision that impacted diagnostic testing because he did not feel CMS would approve additional testing based upon cost." Doc. Ent. 101 at 2. In support of this claim, he points to Paragraph 17 of his complaint, wherein he stated that Westover "did not believe CMS would approve any further testing." Doc. Ent. 1 at 13 ¶ 17. Plaintiff claims that "[w]hat is not known, at this point, is whether he made that statement about CMS because of a 'policy' or a 'custom'." Doc. Ent. 101 at 2. *See Holmes v. Overton,* 2006 WL 2795459, *5 (W.D.Mich. Sept.27, 2006) (accepting and adopting report and recommendation and denying defendants' motion for summary judgment, "because plaintiff has shown that there was a policy that gave economic incentive to deny medical care, a question of fact exists in this case whether CMS should be liable."). Furthermore, while Plaintiff generically refers to "Health Care Professionals," he claims that "[t]he basis of every decision is economic." Doc. Ent. 1-2 at 11 ¶ 79. Plaintiff claims that "[a]t JCF they have an agenda that includes, the aphorism 'less is more' and it is often to the peril of sick prisoners." Doc. Ent. 1-2 at 44 ¶ 97. Also, Plaintiff claims that Antonini was sent to JMF "to show these doctors how to save money by discarding prisoner medical concerns [,] and they are acting in accord." Doc. Ent. 1-4 at 30 ¶ 154.
>
> Second, Plaintiff is alleging a pattern of problematic dispensation of his prescribed medicine. Specifically, he asserts that in three cases his chemotherapy medication was "not provided as prescribed." Doc. Ent.

6

1-2 at 30 ¶ 91. Within his complaint, Plaintiff refers to the July 7, 2004 "First Report on Medical Services" by Robert L. Cohen, M.D., in *Hadix v. Johnson.* Doc. Ent. 1-2 at 36 ¶ 91(a). The first six pages of this report were attached to Plaintiff's March 13, 2008 response to the MDOC Defendants' November 29, 2007 dispositive motion. Doc. Ent. 56 at 13-18. In his complaint, Plaintiff represents that page 16 of the report states, "[t]he *Hadix* facilities are not committed to providing medications the same day they are ordered. This policy is supposed to apply to patients seen at specialty clinics ... This system regularly fails." Doc. Ent. 1-2 at 36 ¶ 91(a). (footnotes omitted)

Defendant PHS asserts that, like the plaintiff in *Vickery*, Plaintiff here merely alleges that PHS has a policy requiring approval for physical therapy and, in this case, approval was denied. The court agrees. Because Plaintiff has failed to allege that the denial of physical therapy in his case was the result of a PHS custom or policy to deny approval for such therapy, Defendant PHS is entitled to dismissal.

In light of the foregoing, the court concludes that Defendants' motions to dismiss will be granted and this case will be dismissed in its entirety.

An Order and Judgment consistent with this Opinion will be entered.

Dated:      3/16/2011                    */s/ R. Allan Edgar*
                                          R. Allan Edgar
                                          United States District Judge